## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **JENNY SCHIEBER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Case No. 20-00264 (RJL)** |
| | ) | |
| **UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION
(March 15, 2021) [Dkt. #12]

Plaintiff Jenny Schieber ("plaintiff" or "Schieber") brings this action under the Federal Tort Claims Act ("FTCA") against the United States ("defendant" or the "Government") for damages arising from its allegedly negligent rejection of her claim for compensation under an international agreement.  *See* Compl. [Dkt. #1].  Before the Court is the United States' Motion to Dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction.  *See* Def.'s Mot. to Dismiss ("Def.'s MTD") [Dkt. #12].  Upon consideration of the parties' pleadings, relevant law, and the entire record, I agree with the United States that sovereign immunity bars this suit.  Accordingly, defendant's Motion to Dismiss is GRANTED and plaintiff's Complaint is DISMISSED.

## BACKGROUND

This case arises from an international agreement between the United States and France designed to compensate certain Holocaust survivors: The Agreement Between the

Government of the United States of America and the Government of the French Republic on Compensation for Certain Victims of Holocaust-Related Deportation from France Who Are Not Covered by French Programs (the "Agreement"). Compl. ¶ 1. Under the Agreement, France capitalized a fund (the "Holocaust Deportation Fund") with $60 million and the United States agreed to administer distributions to certain persons who survived deportation from France during the Holocaust as well as their surviving spouses and assigns. *See* Ex. A to Def.'s MTD at Art. 2. To avoid duplicative payments under existing French programs and other similar international agreements, the Agreement excludes French nationals and certain nationals of other countries from eligibility. *Id.* at Art. 3. It also requires claimants to submit sworn statements of nationality and affirm they have not received any Holocaust-deportation-related compensation from other sources. *Id.* at Art. 5.

The Agreement provides that the United States "shall distribute" the $60 million "according to criteria which it shall determine unilaterally, in its sole discretion." *Id.* at Art. 6. But the Agreement clarifies that "notwithstanding" this discretion, the United States "shall rely" on a claimant's "sworn statement of nationality" and "sworn representations" in determining whether a claimant is ineligible to receive compensation under the Agreement due to their nationality or eligibility under other programs or international agreements. *Id.*

Plaintiff is currently a citizen and resident of Israel. Compl. ¶ 10. Plaintiff's mother was deported from France to Auschwitz on July 31, 1943. *Id.* ¶ 12. She was

survived by her spouse, plaintiff's father, who passed away in 1964 in Belgium. *Id.* Plaintiff's father was stateless when he died. *Id.* ¶¶ 14–16.

In 2016, plaintiff brought a claim under the Agreement on behalf of her father's estate, asserting that as a surviving spouse of a deported person he was eligible to receive compensation. *Id.* ¶ 13. In conjunction with this claim, plaintiff submitted affidavits averring her father was stateless when he died. *Id.* ¶¶ 15–16. Nonetheless, the United States Department of State ("State Department")—the agency responsible for administering the Holocaust Deportation Fund, *see* Ex. A to Def.'s MTD at Art. 4—took the position that plaintiff "had provided no evidence of the fact that [her father] was stateless" and rejected plaintiff's claim on April 3, 2018. Compl. ¶¶ 7, 14.

Unsatisfied with this result, plaintiff brought this suit under the FTCA alleging the State Department "wrongfully rejected" her claim, *see id.* ¶¶ 4–5, 23, and seeking $46,570.80 in damages—the amount her father's estate would have received from the Holocaust Deportation Fund under the Agreement. *Id.* ¶¶ 7–8.

## STANDARD OF REVIEW

Federal courts possess only limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). When, as here, a party moves to dismiss under Federal Rule of Civil Procedure 12(b)(1), the Court must "determine whether it has subject matter jurisdiction in the first instance." *Taylor v. Clark*, 821 F. Supp. 2d 370, 372 (D.D.C. 2011) (quoting *Curran v. Holder*, 626 F. Supp. 2d 30, 32 (D.D.C. 2009)). Under Rule 12(b)(1), plaintiff bears the burden of proving by a preponderance of the

evidence that the Court has subject-matter jurisdiction. *Biton v. Palestinian Interim Self-Gov't Auth.*, 310 F. Supp. 2d 172, 176 (D.D.C. 2004). The Court must accept as true all well pleaded factual allegations and draw all reasonable inferences in plaintiff's favor. *Taylor*, 821 F. Supp. 2d at 372. But "the Court may give the plaintiff's factual allegations closer scrutiny" than it would in assessing a motion under Rule 12(b)(6). *Logan v. Dep't of Veteran Affairs*, 357 F. Supp. 2d 149, 153 (D.D.C. 2004). The Court may also consider materials outside of the pleadings. *Id.*

## ANALYSIS

The United States generally enjoys sovereign immunity shielding it from tort actions for money damages. *Jayvee Brand, Inc. v. United States*, 721 F.2d 385, 389 (D.C. Cir. 1983). Courts may only entertain such suits against the United States where an express waiver of sovereign immunity exists. *Id.* The FTCA operates as such a waiver, "render[ing] the United States subject to suit for certain, but not all, tort claims." *Lewis v. D.C. Police Dep't*, 271 F. Supp. 3d 177, 180 (D.D.C. 2017).

Under the FTCA, a plaintiff may sue the United States for "injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government." 28 U.S.C. § 1346(b)(1). But the waiver only extends to circumstances "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id.* This condition—known as the "local law requirement"—obligates an FTCA plaintiff to show that the United States would be liable under applicable principles of state or local law in order for the FTCA's waiver to apply. *Art Metal-USA, Inc. v. United States*, 753 F.2d

4

1151, 1157 (D.C. Cir. 1985) (holding the FTCA only waives the United States' sovereign immunity "to the extent that a private person in like circumstances could be found liable in tort under local law"); *see also FDIC v. Meyer*, 510 U.S. 471, 478 (1994) ("[W]e have consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State—the source of substantive liability under the FTCA.").

Plaintiff contends the FTCA's waiver applies here. Compl. ¶ 7; Pl.'s Opp'n to Def.'s MTD ("Pl.'s Opp'n") [Dkt. #16] at 4–6. To satisfy the local law requirement, plaintiff points to D.C. tort law, arguing that the United States was negligent in rejecting plaintiff's claim for compensation under the Agreement. *See* Compl. ¶¶ 4–6, 11, 23 (alleging "wrongful" acts on behalf of the United States); Pl.'s Opp'n at 4–6 (arguing that "the Complaint here alleges facts sufficient to sustain a negligence cause of action against Defendant under District of Columbia law and the FTCA"). Defendant counters that the Complaint's alleged "wrongful" acts are based entirely on the Agreement and "any alleged duties created by an international agreement are not predicated on state law as the FTCA requires."[1] Def.'s MTD at 6. Unfortunately for plaintiff, defendant is correct. How so?

---

[1]  Defendant also contends the Court lacks jurisdiction because (1) plaintiff's claim falls within the discretionary function exception to the FTCA, *see* 28 U.S.C. § 2680(a) (establishing that the United States maintains immunity for claims based on "the exercise or performance . . . [of] a discretionary function"), and (2) any purported injury occurred outside the United States and therefore falls within the foreign country exception to the FTCA, *see Sosa v. Alvarez-Machain*, 542 U.S. 692, 712 (2004) (holding the United States maintains immunity from suits where the purported injury was "suffered in a foreign country, regardless of where the tortious act or omission occurred"). Because the Court finds jurisdiction lacking under 28 U.S.C. § 1346(b)(1), it need not, and does not, consider these alternative arguments.

Far from constituting negligence under D.C. tort law, plaintiff's claim stems entirely from this international Agreement. As the Complaint makes clear, the State Department's alleged "wrongful" act arises from its refusal to accept plaintiff's affidavits regarding her father's citizenship. *See* Compl. ¶¶ 4, 14–15, 17, 23–24. This, the Complaint repeatedly alleges, violates the terms of the Agreement. *See* id. ¶ 3 ("[t]he Agreement . . . states at Article 6 that a declaration on one's honor as to nationality is sufficient to satisfy the requirements regarding citizenship"); *id.* ¶ 15 ("[t]he Agreement itself at Article 6 provides that a declaration on one's honor as to nationality is sufficient to establish that element of claim eligibility"); *id.* ¶ 17 (alleging that the State Department's refusal to accept plaintiff's affidavits as sufficient "violates both the spirit and the language of the Agreement"); *id.* ¶ 24 ("The Agreement requires that a claimant's statements of nationality in declarations of honor be recognized by [the State Department] acting as claims administrator."). Thus, without ruling on the merits of plaintiff's proposed interpretation of the Agreement, the Court concludes her claim relies entirely on the *supposed* treaty requirement that the State Department accept sworn statements as sufficient for purposes of determining eligibility under the Agreement. In substance, her claim is that the Government failed to follow the requirements of the Agreement in rejecting her claim for compensation thereunder.

As such, plaintiff's claim is analogous to those cases alleging tortious conduct arising from the Government's failure to follow the requirements of a federal statute or regulation. *See, e.g.*, *Hornbeck Offshore Transp. LLC v. United States*, 569 F.3d 506, 509 (D.C. Cir. 2009) (denying FTCA liability where the U.S. Coast Guard erroneously

decided that plaintiff's single-hulled oil barge was required to phase-out by 2005 instead of 2015); *Appleton v. United States*, 180 F. Supp. 2d 177, 186 (D.D.C. 2002) (denying FTCA liability arising from the Bureau of Alcohol Tobacco and Firearm's allegedly negligent initial approval of import permits); *see also Akutowicz v. United States*, 859 F.2d 1122, 1125–26 (2d Cir. 1988) (denying FTCA liability where the State Department erroneously decided plaintiff had revoked his U.S. citizenship).   In those situations, our Circuit Court has held that plaintiffs cannot manufacture a cognizable FTCA claim simply by labelling the violation of a federal statute or regulation 'negligent.' *Hornbeck Offshore Transp.*, 569 F.3d at 509 ("[I]t is virtually axiomatic that the FTCA does not apply where the claimed negligence arises out of the failure of the United States to carry out a federal statutory duty." (quoting *Sea Air Shuttle Corp. v. United States*, 112 F.3d 532, 536 (1st Cir. 1997))); *see also Art Metal-USA*, 753 F.2d at 1157 (holding "the violation of a federal statute or regulation by government officials does not of itself create a cause of action under the FTCA" and noting that "[t]he FTCA's local law requirement may not be circumvented merely by casting the alleged . . . wrong as negligence"). Because that is precisely what plaintiff seeks to do here, her claim cannot survive.[2]

   *Hornbeck* is indeed instructive.  The plaintiff in that case—Hornbeck Offshore Transportation, LLC ("Hornbeck")—owned a single-hulled oil barge that was required to be phased out of operation under the Oil Pollution Act of 1990 ("OPA").  *Hornbeck*

---

[2]  It makes no difference that plaintiff's alleged violation stems from an international agreement as opposed to a federal statute or regulation.  What is crucial for purposes of the FTCA is that the allegedly breached duty be found in state or local law—here the tort law of D.C.—and not originate from an alternative source. *See Meyer*, 510 U.S. at 478 (describing state law as the "source of substantive liability under the FTCA").

*Offshore Transp.*, 569 F.3d at 507–08.  The U.S. Coast Guard initially determined that, due to the weight of the barge, it had to cease operation by 2005.  *Id.* at 508.  Hornbeck abided by this directive but simultaneously brought a claim under the Administrative Procedure Act ("APA") challenging the Coast Guard's determination that 2005 was the effective phase out deadline.  *Id.*  The district court found in Hornbeck's favor on the APA claim, holding the actual phase out deadline under the OPA was 2015.  *Id.*  Subsequently, Hornbeck brought an FTCA suit for damages caused by the U.S. Coast Guard's erroneous initial determination and the concomitant sidelining of its barge for the pendency of its APA suit.  *Id.*

The district court rejected Hornbeck's FTCA claim for lack of subject-matter jurisdiction, holding that Hornbeck failed to satisfy the local law requirement.  Our Circuit Court affirmed, rejecting Hornbeck's "attempts to bring its claims under D.C. tort law" and holding instead that the Coast Guard's violation flow[ed] "only from a federal statute."  *Id.* at 509.  Without the statutory provision specifying phase-out dates for barges, the Circuit held, "Hornbeck could not possibly have a claim for damages."  *Id.*; *accord Johnson v. Sawyer*, 47 F.3d 716, 728 (5th Cir. 1995) (en banc) ("[T]he FTCA . . . is unavailable where [t]he existence or nonexistence of the claim depends entirely upon Federal Statutes.").

Plaintiff's claim here is similarly dependent on the Agreement.  Without the supposed requirement of Article 6 that the State Department must accept sworn affidavits as sufficient to establish eligibility, plaintiff would have no claim.  Just as no "local law impose[d] tort liability for bungling the phase-out date for Hornbeck's barge," *Hornbeck*

*Offshore Transp.*, 569 F.3d at 509, so no principle of D.C. tort law imposes liability for failing to accept affidavits as sufficient proof of nationality or citizenship.  Thus, as in *Hornbeck*, plaintiff's claim here must fail.[3]

Because plaintiff fails to satisfy the local law requirement, the FTCA's waiver of sovereign immunity does not extend to her claim.  Accordingly, defendant's sovereign immunity bars this suit and deprives the Court of subject-matter jurisdiction.  *Hornbeck Offshore Transp.*, 569 F.3d at 512 ("The extent of the waiver of sovereign immunity under the FTCA is coextensive with the district court's subject-matter jurisdiction to hear the case").  As such, I must DISMISS plaintiff's Complaint.

## CONCLUSION

For the foregoing reasons, defendant's Motion to Dismiss is GRANTED and the action is DISMISSED in its entirety.  An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

[3]  Plaintiff's attempts to refer generally to negligence standards do not change this result. *See Hornbeck Offshore Transp.*, 569 F.3d at 509 (rejecting "attempts to circumnavigate the local law requirement by arguing that there is a 'general duty of one who undertakes an action . . . to act with due care'"); *Art Metal-USA*, 753 F.2d at 1160.